# IN THE COURT OF APPEALS OF IOWA

No. 19-0557
Filed July 24, 2019

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**F.C., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.


 A mother appeals a district court order terminating her parental rights to her child. **AFFIRMED.**


 Maura C. Goaley, Council Bluffs, for appellant mother.

 Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

 Sara E. Benson of Benson Law, P.C., Council Bluffs, attorney and guardian ad litem for minor child.


 Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals a district court order terminating her parental rights to her child, born in 2016. She contends (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the court; (2) the department of human services did not make reasonable reunification efforts; and (3) termination is not in the child's best interests.

The district court terminated the mother's parental rights pursuant to two statutory grounds. We may affirm if we find clear and convincing evidence to support either of the grounds. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We focus on Iowa Code section 232.116(1)(h) (2018), which requires proof of several elements, including proof the child cannot be returned to the parent's custody.

Our de novo review of the record reveals the following facts. When the child was less than one year old, his mother left him with two men while she went to the store to get cigarettes. On her return, the mother saw the men outside the apartment, without her son. The child's grandmother called the police, who found drug paraphernalia throughout the apartment. The child's father admitted he regularly used marijuana and other illegal substances. The mother denied drug use but conceded knowledge of the father's usage and her presence in the apartment with the child while the father was consuming the substances.

The State charged both parents with child endangerment. The mother was ultimately placed on probation. The father, who was on probation at the time of the charge, had his probation revoked and served a six-month prison sentence.

Meanwhile, police took the child into protective custody. The district court transferred him to the department's temporary custody and the department, in turn, placed the child with his paternal grandmother.

The State filed a child-in-need-of-assistance petition. The department afforded the mother two to three supervised visits per week and provided assistance in "obtain[ing] and demonstrat[ing] safe and appropriate parenting techniques." The visits remained fully supervised throughout the proceedings. At the termination hearing, the case manager testified the mother's parenting skills had "not progressed enough to deem her safe and appropriate to have [the child] unsupervised . . . and her cognitive abilities" relating to parenting the child were "questionable." She noted that when the mother was "out in the community" on supervised visits, she required "continuous prompting on parenting skills." Although the case manager acknowledged the mother showed "progress and . . . interest" in services, she recommended against returning the child to her custody.

The district court adopted the recommendation, reasoning the mother "progressed to the point where she [could] live on her own and care for herself but not [the child]." We concur in the court's reasoning. We conclude termination was warranted under section 232.116(1)(h).

In reaching this conclusion, we have considered the mother's contention that the department failed to make reasonable efforts to reunite her with her child. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." (citation omitted)). It is true the department failed to obtain a psychosocial evaluation and parenting skills assessment until approximately one

week before the State filed the termination petition. But the department continued to provide services until the termination hearing, including visits and therapy. *See id.* at 528 (stating "reasonable efforts obligation runs until the juvenile court has entered a final written order of termination"). The department satisfied its reasonable-efforts mandate.

We have also considered the mother's consistent participation in services, including visits, parent-skills training, drug testing, weekly therapy sessions, and a psychosocial evaluation. Her compliance is commendable. But after more than one year of intensive assistance, there was scant indication she could care for the child independently.

Moreover, the people on whom the mother relied for informal support generated additional safety concerns. According to the case manager, the child's maternal grandmother, who was the mother's primary source of financial and emotional support, had "an extensive history with [the department]" and was "not considered safe and appropriate to be around [the child.]" The child's father also was considered unsafe, given his refusal to participate in services offered by the department. Notably, he moved in with the mother on his release from prison and remained with her until "approximately a week" before the termination hearing. The guardian ad litem stated the mother "lied about" his cohabitation, apparently recognizing his presence would impede reunification.

The guardian ad litem acknowledged the mother was "capable of parenting the child" in the long-term. But she also pointed out that the case had "been going on for quite some time." We are obligated to view the statutory time frames for termination with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa

2000). In this case, that time frame was six months, and the child was out of the mother's care for eighteen consecutive months. Iowa Code § 232.116(1)(h)(3). We conclude termination is appropriate notwithstanding the mother's willingness to comply with reunification services.

Termination also must be in the child's best interests. *Id.* § 232.116(2). The child was diagnosed with "severe asthma" and "und[er]developed lungs." In the case manager's view, the mother lacked "a full understanding of the severity of her son's asthma and medical conditions." She suggested that "if [the mother] had participated in doctors' appointments and had . . . knowledge of what his asthma attacks look like and how to properly handle that situation," reunification might have remained the goal. She pointed out that the medical appointments were discussed during visits and the service provider offered her transportation to and from the appointments. She acknowledged the mother had been taught how to use a nebulizer but she did not believe the mother was "100 percent confident to recognize what [the child's] asthma attacks look like if one were to occur."

On our de novo review, we believe the case manager overstated the mother's cognitive deficits. Although several records referred to the mother's low IQ, a psychiatric evaluation ruled out borderline intellectual functioning. That said, the parenting assessment emphasized the need for ongoing "parenting education and in-home supports" for the mother to be an effective parent. Given that recommendation, immediate return of the child to the mother was not a viable option. We conclude termination of the mother's parental rights to the child is in the child's best interests.

We affirm the termination of the mother's parental rights to her child.

**AFFIRMED.**